UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:
NEIL VANLEEUWEN and RODNEY :
OMANOFF, :
 :
                              Plaintiffs, :
 :
    -against- :
 :
KEYUAN PETROCHEMICALS, INC., *et al.*, :
 :
                             Defendants. :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 8, 2014

13 Civ. 6057 (PAC)

**ORDER AND OPINION**

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiffs Neil Vanleeuwen and Rodney Omanoff (collectively, "Plaintiffs") brought this class action in the U.S. District Court for the Central District of California against Defendants Keyuan Petrochemicals, Inc. ("Keyuan"), Chunfeng Tao ("Tao"), Aichun Li ("Li"), Weifeng Xue ("Xue") (collectively, the "Individual Defendants"), and Delight Reward Limited ("Delight Reward") (collectively, "Defendants") alleging claims for: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78a *et seq.*, and Rule 10b-5, 17 C.F.R. § 240.10b-5, against Defendants; and (2) violation of Section 20(a) of the Act against the Individual Defendants. Plaintiffs are Keyuan shareholders who allege that Defendants failed to disclose related-party transactions in Offering Documents distributed in connection with the March and April 2010 private sales of Keyuan stock ("the Private Class") and in regulatory filings made in connection with purchases of Keyuan common stock over the NASDAQ exchange between August 16, 2010 and October 7, 2011 (the "Public Class").[1]

      On August 26, 2013, U.S. District Judge Philip S. Gutierrez held that venue in the Central

---

[1] The claims against Li are solely with respect to the Public Class, and against all other defendants with respect to both classes.

District of California was improper and transferred the action to this Court. *See Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495, 2013 WL 4517242 (C.D. Cal. Aug. 26, 2013). Judge Gutierrez deferred to this Court the remaining issues in Li's motion to dismiss Plaintiffs' Third Amended Complaint.[2]

The Court DENIES Li's motion to dismiss.

## BACKGROUND

### I.  Facts

Keyuan, a Nevada Corporation, manufactures and sells petrochemical products in the People's Republic of China ("China"). Third Amended Complaint ("TAC"), ECF No. 97, ¶ 22. Tao is the current Chairman of the Board and Chief Executive Officer of Keyuan. *Id*. ¶ 24.[3] During 2009 and 2010, Keyuan allegedly engaged in a number of undisclosed transactions with entities owned and controlled by Tao. *Id.* ¶¶ 86-96. These transactions totaled over $21 million in 2009 and $100 million in 2010, and the amount of raw materials purchased from Tao represented 36 percent in 2009 and 47 percent in 2010 of Keyuan's inventory. *Id.*

On May 12, 2010, Keyuan became a publicly-listed company in the United States

---

[2] Before transfer from the Central District of California to the Southern District of New York, Plaintiffs filed a first, second, and third amended complaint. As of the time the case was transferred, Judge Gutierrez had denied, in part, and granted, in part, Tao's motion to dismiss the Second Amended Complaint. *See Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11-0405, 2013 WL 2247394 (C.D. Cal. May 9, 2013). Specifically, Judge Gutierrez held that (1) the law of the case doctrine barred Tao from relitigating his liability under the Section 10(b), Public Class claims, *id.* at *7-10, (2) even if Tao could relitigate the issue, Plaintiffs adequately pled the Section 10(b), Public Class claims, *id.* at *15-20 (3) the Section 10(b), Private Class claims are insufficient to support an inference of scienter as to Tao but Plaintiffs could amend their pleadings, *id.* at *11-15, (3) Plaintiffs adequately pled Section 20(a) claims against Tao, *id.* at 20-21. As to Xue and Delight Reward, neither has appeared in this action. On May 17, 2013, the Central District of California entered default against Delight Reward. *See* ECF No. 96. Plaintiffs also applied for an entry of default against Xue, *see* ECF No. 140, but the Central District of California did not grant the request prior to transferring the case.

[3] Xue was the Vice President of Accounting until August 2011. *Id.* ¶ 27. Delight Reward is a British Virgin Islands Corporation and was a controlling shareholder of Keyuan during the Private and Public Classes.

through a reverse merger transaction. *Id.* ¶ 23. At about this time, Keyuan hired Li to act as its Chief Financial Officer ("CFO"). *Id.* ¶ 25. She is a U.S.-licensed Certified Public Accountant who previously worked as a member of the CFO Group at Bank of America and as a consultant at Deloitte and Touche LLP. *Id.* ¶ 25. Keyuan apparently hired Li given her knowledge of U.S. Generally Accepted Accounting Principles ("GAAP") and U.S. financial reporting requirements. As CFO, Li certified in management representation letters and SEC filings that Keyuan had made no undisclosed related-party transactions. TAC, ¶¶ 77-83, 103-07.

On January 17, 2011, Keyuan retained KPMG, LLP ("KPMG") to audit Keyuan's 2010 year-end financial statements. *See* Declaration of Howard M. Privette in Support of Motion to Dismiss ("Privette Decl."), ECF No. 162, Ex. 2, at 2. KPMG subsequently raised concerns regarding certain Keyuan cash transactions and recorded sales, and Keyuan was unable to file a timely 10-K for the 2010 fiscal year as a result. TAC, ¶ 109. On October 20, 2011, Keyuan filed its 10-K, disclosing the 2009 and 2010 related-party transactions for the first time. *Id.* ¶ 87. On November 1, 2011, Keyuan filed restated 10-Qs for the second and third quarters in 2010 to include the related-party transactions. *Id.* ¶¶ 94–96.

## II.   The SEC Action

Sixteen months later, on February 28, 2013, the SEC brought a civil frauds action against Keyuan and Li, in part, for nondisclosure of related-party transactions in the SEC filings. *See* Complaint, *SEC v. Keyuan Pharmaceuticals, Inc.*, No. 13-CV-263 (RC) (DDC), ECF No. 1. On July 1, 2013, the District Court entered a final judgment, on Li's consent, permanently enjoining Li from future violations of the Act and imposing a civil penalty of $25,000 without admitting or denying the SEC's allegations. *See* Declaration of Phillip Kim, ECF No. 164, Ex. 1. Plaintiffs rely, in part, on the SEC's allegations pertaining to Li to form the basis of their own claims

against her in the Third Amended Complaint.  *See* TAC, ¶¶ 84–85.

## DISCUSSION

I.	**Legal Standard**

To state a claim, a plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A securities fraud claim under Section 10(b) of the Act and Rule 10b–5 must also satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b).  *Id.* at 99.  Rule 9(b) requires that for complaints alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake."  A plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 84 (2d Cir. 1999).  Furthermore, the PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

II.	**Analysis**

A.	**Plaintiffs State a Claim Under Section 10(b) for the Public Class**

Section 10(b) makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."  15 U.S.C. § 78j(b); *see* 17 C.F.R. § 240.10b-5.  To state a claim, a plaintiff must allege the defendant "(1) made a material misrepresentation or a material omission

as to which he had a duty to speak, or used a fraudulent device; (2) with scienter, (3) in connection with the purchase or sale of securities." *SEC v. Pentagon Capital Mgmt. PLC,* 725 F.3d 279, 285 (2d Cir. 2013) (internal quotation omitted). Here, Li argues that she did not have a duty to disclose the alleged related-party transactions and that she did not act with scienter. Both arguments are rejected.

First, Li had a duty to disclose Keyuan's material related-party transactions. *See* Statement of Financial Accounting Standards No. 57, Related Party Disclosures ("Financial statements shall include disclosures of material related party transactions . . . ."); 17 C.F.R. § 229.404(a) ("Describe any transaction . . . in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest."). There is no dispute that material related-party transaction occurred; but Li asserts she is not accountable for not disclosing those transactions. *See* Memorandum of Law in Support of Li's Motion to Dismiss ("Def.'s Mot."), ECF No. 161, at 20-21. Li signed and certified various registration statements, however, during the Public Class period that failed to disclose the transactions and therefore constituted a "maker" of these statements or omissions. *See SEC v. Subaye, Inc.*, No. 13 Civ. 3114, 2014 WL 448414, at *8 n.2 (S.D.N.Y. Feb. 4, 2014). Although FAS No. 57 and Item 404(a) may only reference a company's disclosure duties, Li—as a "maker" of the statements—was clearly bound to disclose all required information. *See, e.g.*, *SEC v. Escala Grp., Inc.*, No. 09 Civ. 2646, 2009 WL 2365548, at *14 (S.D.N.Y. July 31, 2009) (holding that the corporation's CFO had a duty to disclose transactions that he knew were with a related party under FAS No. 57).

Second, Plaintiffs sufficiently allege that Li acted with scienter. Scienter may be established by alleging with particularity: "(1) that defendants had the motive and opportunity to

5

commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Glasser v. The9, Ltd.*, 772 F. Supp. 2d 573, 586 (S.D.N.Y. 2011) (internal quotation omitted). In determining whether a plaintiff has pled "a strong inference of scienter," a reviewing court must evaluate all the facts alleged collectively. *Local No. 38 IBEW Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 458 (S.D.N.Y. 2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)). Plaintiffs solely rely on allegations of "conscious misbehavior or recklessness," and therefore bear a "correspondingly greater" burden. *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 233 (S.D.N.Y. 2010) (internal quotations omitted). Recklessness means "'conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.1978)).

Here, Plaintiffs have plausibly alleged "conscious misbehavior or recklessness" by pleading facts indicating that Li was aware of the third-party transactions and failed to disclose them. Specifically, Plaintiffs allege that in or about April or May 2010, an audit manager for Keyuan's auditor told Li that "the company was engaged in related-party transactions and that those transactions should be separately identified and disclosed." TAC, ¶ 84. Despite the audit manager's clear warning, "Li failed to take reasonable steps to ensure that the company was properly identifying and disclosing related party transactions." *Id.* Later, in August 2010, when asked to determine whether any of Keyuan's loan guarantors was a related party, Li spoke with two Keyuan upper-level employees who informed Li that the loans were guaranteed by related parties. *Id.* ¶ 85(a). Li acknowledged the related nature of the loan guarantees, *id.*, but failed to properly disclose them. Plaintiffs further allege that Li was copied on four emails containing

debt schedules that identified related parties as Keyuan's loan guarantors. *Id.* ¶ 85(b). By alleging specific facts suggesting that Li knew about the related-party transactions and repeatedly failed to disclose them, Plaintiffs have plausibly alleged scienter.[4]

Li attempts to evade liability by arguing that Plaintiffs cannot rely on allegations taken from the SEC "books and records" complaint to establish scienter. *See* Def.'s Mot. at 16. While these facts may not be admissible at trial, "[t]here is no absolute rule barring a private plaintiff from relying on government pleadings and proceedings in order to meet the rule 9(b) and PSLRA thresholds." *SEC. v. Lee*, 720 F. Supp. 2d 305, 340 (S.D.N.Y. 2010). In fact, this Court has held that "'there is nothing improper about utilizing information contained in an SEC complaint as evidence to support private claims under the PSLRA.'" *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) (quoting *Lee*, 720 F. Supp. 2d at 341). "Indeed, '[i]t makes little sense to say that information from . . . a study [or investigation]—which the [complaint] could unquestionably rely on if it were mentioned in a news clipping or public testimony—is immaterial simply because it is conveyed in an unadjudicated complaint.'" *Id.* (quoting *In re Bear Stearns Mortgage Pass–Through Certificates Litig.,* 851 F. Supp. 2d 746, 767–68 (S.D.N.Y. 2012)).[5] As a result, Plaintiffs appropriately relied on the SEC complaint in pleading scienter and therefore state a claim under Section 10(b).

---

[4] Li attempts to draw a distinction between "loan guarantees" and the related-party transactions alleged in the Third Amended Complaint. *See* Def.'s Mot. at 17. But the Court must not read Plaintiffs' claims that narrowly on a motion to dismiss.

[5] Equally unconvincing is Li's argument that it is "particularly telling" that the SEC elected not to pursue the case. *See* Mot. at 16. The SEC's decision to not prosecute its claims is irrelevant as to whether Plaintiffs have plausibly alleged claims in *this* case.

### B.     Plaintiffs State a Claim Under Section 20(a) for the Public Class

Alternatively, Plaintiffs also assert that Li is a control person under Section 20(a). "While a party cannot be held liable for both a primary violation and as a control person, alternative theories of liability are permissible at the pleading stage." *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 534-535 (S.D.N.Y. 2010). To establish a Section 20(a), a plaintiff must allege: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns*, 493 F.3d at 108.

Li claims that Plaintiffs fail to allege particular facts to establish that she acted as a "control person." *See* Def.'s Mot. at 22. Control is only established when a "defendant exercised actual control over the matters at issue." *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 415 (S.D.N.Y. 2010). In other words, Li must have exercised actual control over the preparation of the allegedly misleading financial documents. "Generally, signing a financial statement filed by the company is enough to establish control over those who wrote the statement, as well as the content of the statement." *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013). Not only do Plaintiffs claim that Li signed the financial statements, but they also allege particular facts demonstrating Li's actual control. For example, the complaint asserts that "in connection with the preparation of the second quarter 2010 10-Q, in July 2010, Keyuan's Audit Committee Chairman specifically asked Li for a 'detailed listing of all related party transaction'" and that "[t]he same Audit Committee Chairman directed Li on two subsequent occasions to ensure proper disclosure of related party transactions." TAC, ¶ 85. The Complaint alleges that Li was hired primarily to oversee—and therefore control—the financial reporting process.

Furthermore, Li argues that she was not a culpable participant in the violation. *See* Def.'s Mot. at 23. But this element is satisfied by the Court's finding that Plaintiffs alleged Li's "conscious misbehavior or recklessness." *See supra* pp. 5-7; *see also In re Satvam Computer Servs.*, 915 F. Supp. 2d at 483 ("A plaintiff asserting a section 20(a) claim must allege at least 'particularized facts of the controlling person's conscious misbehavior or recklessness.'" (quoting *In re CIT Grp. Inc. Sec. Litig.*, No. 08 Civ. 6613, 2010 WL 2365846, at *5 (S.D.N.Y. June 10, 2010))). As a result, Plaintiffs have sufficiently alleged that Li acted as a control person under Section 20(a).

## CONCLUSION

Li's motion to dismiss the Third Amended Complaint is DENIED. The Court has scheduled a status conference for Thursday, September 4, at 2:15pm, in Courtroom 14C. The parties should submit a joint civil case management plan before the conference.

Dated: New York, New York
      August 8, 2014

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge